IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02038-CNS-KLM

ARGELIA ENRIQUE-CHAVEZ, individually and as a representative on behalf of the Estate of Gerardo Manuel Chavez, deceased,

    Plaintiff,

v.

DILLON COMPANIES, LLC, doing business as The Kroger Company,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion for Stay Deferring Time to Respond to Defendant's Motion for Summary Judgment Pursuant to 56(d)** [#54] (the "Motion"). Defendant filed a Response [#59] in opposition to the Motion [#54], Plaintiff filed a Reply [#67], and, with permission of the Court, Plaintiff filed a Supplemental Reply [#86], and Defendant filed a Surreply [#87]. *Minute Order* [#85]. Pursuant to 28 U.S.C. § 636(b) and D.C.COLO.LCivR 72.1(c), the Motion [#54] has been referred to the undersigned. *See* [#55]. The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#54] is **DENIED**.

**I. Background**

Plaintiff pursues two causes of action in this premises liability case: a wrongful death claim and a survival claim, both in connection with the death of Gerardo Manuel

–1–

Chavez ("Chavez"), which resulted from his fall on Defendant's premises. *Compl.* [#6] at 1, 5-9. Plaintiff alleges that Mr. Chavez was working on the premises when he leaned against a small, unsecured rail that was in a location where a permanent, secured safety rail had been in the past. *Id.* at 3-5. The small rail gave way, and Mr. Chavez fell into a loading dock area situated on a lower plane than where Mr. Chavez had been standing. *Id.* Mr. Chavez died of his injuries four days later. *Id.* at 6. Plaintiff asserts that "Mr. Chavez was positioned at a Central Fill Center in Denver, Colorado ["Denver Central Fill" or "DCF"], when he fell . . . ." *Motion* [#54] at 2.

On September 7, 2021, Defendant provided its initial disclosures, including the identification of Kevin McClanahan ("McClanahan"), one of Defendant's asset protection specialists. *Response* [#59] at 1, 11. Plaintiff's disclosures included "an American Guard Services ["AGS"] Security Accident Report, an American Guard Supervisor Report of Accident, an American Guard Services Employee Incident Report, and Mr. Chavez's pay stubs from AGS." *Response* [#59] at 2-3.

On September 8, 2021, Defendant filed an Amended Answer [#17-1] raising a number of affirmative defenses including, for the first time, that "Plaintiffs' claims are barred under the provisions of the Colorado Workers' Compensation Act, C.R.S. §§ 8-41-401 and 8-41-402, which provide tort immunity to 'statutory employers.'" *Am. Answer* [#17-1] at 7 ¶ 5.

On September 14, 2021, the Court held a Scheduling Conference, *see* [#20], and entered a Scheduling Order [#21] which included explicit reference to this affirmative defense, including some legal authority on which Defendant was basing the defense:

–2–

> Defendant contends Plaintiffs' claims are precluded by the Worker's Compensation Act.  *See e.g., Humphrey v. Whole Foods Mkt. Rocky Mountain/Southwest, L.P.*, 250 P.3d 706, 708 (Colo. App. 2010); *see also Finlay v. Storage Technology Corp.*, 764 P.2d 62, 63-64 (Colo. 1988).  As a statutory employer of Mr. Chavez, Defendant is immune from tort liability just as any insured employer would be.  *Humphrey*, 250 P.3d at 709 (quoting *Buzard v. Super Walls, Inc.*, 681 P.2d 520, 523 (Colo. 1984) & citing *Finlay*, 764 P.2d at 64) ("Under the Act, if the direct employer carries workers' compensation insurance, its injured employee 'cannot reach 'upstream' . . . to establish tort liability' against the statutory employer.").

*Scheduling Order* [#21] § 3.b.  The parties also stipulated in the Scheduling Order that:

> (1) Dillon owned the premises located at 1220 S. Lipan Street, Denver, Colorado 80223 ("Premises"); (2) On August 10, 2020, Mr. Chavez was working for AGS as a security guard and assigned to the Premises; and (3) On August 10, 2020, AGS had a security contract with Dillon.

*Response* [#59] at 2 (citing *Scheduling Order* [#21] § 4).  In addition, "as of the filing of the Proposed Scheduling Order, Doc. 18, Plaintiff contemplated the Rule 30(b)(6) deposition of Dillon and other Dillon employees."  *Response* [#59] at 2.

On October 13, 2021, as part of its first supplemental disclosures, Defendant produced a Master Service Agreement ("MSA") expressly showing the agreement between Defendant and AGS for AGS to provide security guard services to Defendant's facilities and "requiring AGS to have workers compensation insurance for its own employees."  *Response* [#59] at 3 (citing [#49]; [#50] at 4-26; *Def.'s Ex. A* [#59-1]).

On November 19, 2021, Plaintiff disclosed Mr. Chavez's worker's compensation file to Defendant, as part of Plaintiff's second supplemental disclosures.  *Response* [#59] at 12.  According to Defendant:

> Plaintiff disclosed 1,399 pages of documentation she obtained related to the underlying worker's compensation claim for Mr. Chavez.  The documentation includes American Guard Services' investigative materials regarding the incident, the worker's compensation carrier's investigative

–3–

> materials regarding the incident, the worker's compensation carrier's claim notes, Mr. Chavez's medical records related to the incident, pleadings and correspondence related to the Plaintiff's worker's compensation claim, and the worker's compensation Fatal Case-General Admission documentation, which was attached to AGS's affidavit in support of Defendant's motion for summary judgment.

*Id.* at 3 (citing [#50] at 27).

On or about December 30, 2021, Defendant asserts that:

> Plaintiff served various admissions regarding Mr. Chavez's employment with AGS, including that he "was working as an unarmed security guard for American Guard Services and located at 1220 S. Lipan Street, Denver, CO 80223 on August 10, 2020" and that she made a claim and received benefits for a workers' compensation claim related to the August 10, 2020 incident.

*Response* [#59] at 3 (citing [#49-2, #49-3].

On February 3, 2022, Plaintiff deposed Jeff Scott ("Scott"), Defendant's Manager of Central Pharmacy Services, who had been working with Denver Central Fill since 2012. *Response* [#59] at 3.  Plaintiff states that "[n]o discovery has been done to determine how long Denver Central Fill has been in operation, if prior to 2014 there was security services needed and what, if anything, changed in 2014 and thereafter to warrant security at Denver Central Fill."  *Motion* [#54] at 7-8.  Defendant states, though, that:

> [D]uring a five-hour deposition Plaintiff elicited from Mr. Scott testimony, regarding, among other things: (1) Mr. Chavez's role, responsibilities, and "routine functions" as a contracted security guard at DCF; (2) Mr. Scott's involvement with the addition of security services at DCF in 2014; and (3) the subject incident.  Plaintiff apparently chose not to question Mr. Scott about the Master Services Agreement.

*Response* [#59] at 4.

On March 3, 2022, Plaintiff served her Fourth Supplemental Fed. R. Civ. P. 26(a)(1) Disclosure [#59-2] which included "Gerardo Manuel Chavez's employment file

received from American Guard Services, Inc." Defendant states that, included in the 94-page employment file, there was a February 21, 2022 letter on AGS letterhead from Mohamed Youssef ("Youssef"), General Counsel for AGS, which invited Plaintiff's counsel to not "hesitate to reach out to [Mr. Youssef] directly" using the contact information listed on the letter. *Def.'s Ex. B* [#59-2] at 4.

On March 22, 2022, Defendant supplemented its disclosure of Mr. McClanahan's testimony "to state specifically that Mr. McClanahan had knowledge and information regarding security services provided at Denver Central Fill and security services utilized by Defendant." *Def.'s Ex. C* [#59-3].

On April 7, 2022, Plaintiff sent a conferral letter to Defendant, stating:

> Lastly, I would like to discuss with you who handles the worker's compensation cases on behalf of Kroger. Since you are intending to file a Motion for Summary Judgment based upon statutory employer, then I will need to take the deposition of the person most knowledgeable about worker's compensation claims by Kroger employees and in particular this claim, and obtain any and all documentation submitted on behalf of Gerardo Chavez regarding this incident.

*Response* [#59] at 11. Defendant states that "[t]he parties did discuss the request, and a proposed list of topics for the proposed deposition was requested by Defendant. Plaintiff never provided the same and does not provide the Court any evidence of having done so." *Id.*

On June 29, 2022, Defendant formally disclosed Mr. Youssef as a witness and identified areas of knowledge and information that he possessed. *Def.'s Ex. D* [#59-4]. That same day, Defendant filed the pending Motion for Summary Judgment [#49]. On July 20, 2022, the day her response to the Motion for Summary Judgment [#49] was due,

Plaintiff filed the present Motion [#54] asking the Court to defer time to respond to the Motion for Summary Judgment [#49] until she could complete certain additional discovery regarding Defendant's "statutory employer" defense.  In short, Plaintiff seeks ten additional interrogatories, ten additional requests for production, leave to take three additional depositions, and time to subpoena certain records from non-parties.  *Motion* [#54] at 10.  More specifically, Plaintiff requests leave to take:

> the depositions of Mr. Youssef and Mr. McClanahan, as well as a 30(b)(6) deposition of a Kroger representative who is familiar with the process of outsources security services, training and use of in-house loss prevention employees, the security needs of Central Fill Centers and how they differ from the security needs of the retail stores, and the MSA between Kroger and AGS.  Discovery should also include the allowance of an additional 10 interrogatories and 10 requests for production, as well as time enough to subpoena records responsive to any relevant answers given at Mr. Youssef's deposition about the MSA between Kroger and AGS, as well as the security services provided by AGS to Kroger at the Central Fill Center, when they began, and under what circumstances they began.

*Id.*

The discovery cut-off was July 29, 2022.  *Minute Order* [#47].  Based on a timely request, a Discovery Hearing was held on August 18, 2022, during which the Court granted Plaintiff's oral Motion to Compel Response to Interrogatory #16, granted in part Plaintiff's oral Motion to Compel Responses to Requests for Production #9 and #10, and took under advisement Plaintiff's oral Motion to Compel Unredacted Version of Section 2 of Document Marked "KSChavez Confidential Bates #00021 and 00022", pending further conferral by the parties.  *See* [#66] at 1-2.  On August 26, 2022, Defendant filed a Notice [#68] that it had produced an unredacted version of the document, which "is a list of stores which are controlled by the MSA's terms and conditions, and for which [AGS] was

contracted to provide services for." *Supp. to Reply* [#86] at 1.

## II. Legal Standard

Pursuant to Fed. R. Civ. P. 56(d): "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." "'In the Tenth Circuit, a non-movant requesting additional discovery under Rule 56(d) must specify'" in the affidavit "'(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment.'" *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir. 2021) (quoting *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (quotations and alteration omitted)).

The Tenth Circuit Court of Appeals has stated: "'We expect Rule 56(d) motions to be robust, and we have observed that an affidavit's lack of specificity counsels against a finding that the district court abused its discretion in denying a request for additional discovery under the rule.'" *Adams*, 30 F.4th at 968 (quoting *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1206 (10th Cir. 2015) (quotations and alteration omitted)). The Court "'may not look beyond the affidavit in considering a Rule 56(d) request.'" *Adams*, 30 F.4th at 968 (quoting *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017)).

## III. Analysis

Before considering the specific requirements underlying a request for additional

discovery under Fed. R. Civ. P. 56(d), the Court briefly reviews the statutory employer defense under Colorado law. "The determination of whether a person or entity is a statutory employer is a question of fact." *Elliott v. Turner Constr. Co.*, 381 F.3d 995, 1001 (10th Cir. 2004) (citing *Virginians Heritage Square Co. v. Smith*, 808 P.2d 366, 368 (Colo. Ct. App. 1991)). "However, whether a legal conclusion based upon undisputed facts is correct is a matter of law." *Elliott*, 381 F.3d at 1001(citing *Virginians Heritage Square Co.*, 808 P.2d at 368).

"The primary purpose of the Colorado workers' compensation act "'is to provide a remedy for job-related injuries, without regard to fault.'" *Elliott*, 381 F.3d at 1001 (quoting *Finlay v. Storage Tech. Corp.*, 764 P.2d 62, 63 (Colo. 1988)). "Through an interrelated set of provisions, "'[t]he statutory scheme grants an injured employee compensation from the employer without regard to negligence and, in return, the responsible employer is granted immunity from common-law negligence liability.'" *Elliott*, 381 F.3d at 1001 (quoting *Finlay*, 764 P.2d at 63). "To be afforded this immunity, an employer must be a "'statutory employer'" as defined by the act." *Elliott*, 381 F.3d at 1001. Colo. Rev. Stat. § 8-41-401(1)(a) defines "statutory employer" as follows:

> Any person, company, or corporation operating or engaged in or conducting any business by leasing or contracting out any part of all of the work thereof to any lessee, sublessee, contractor, or subcontractor . . . shall be construed to be an employer as defined in articles 40 to 47 of this title and shall be liable . . . to pay compensation for injury or death resulting therefrom to said lessees, sublessees, contractors, and subcontractors and their employees or employees' dependents . . . .

"Under Colorado law, 'the test for whether an alleged employer is a "statutory employer" . . . is whether the work contracted out is part of the employer's "regular

–8–

business" as defined by its total business operation." *Elliott*, 381 F.3d at 1002 (quoting *Finlay*, 764 P.2d at 67). "This test is satisfied 'where the disputed services are such a regular part of the statutory employer's business that absent the contractor's services, they would of necessity be provided by the employer's own employees.'" *Elliott*, 381 F.3d at 1002 (quoting *Finlay*, 764 P.2d at 66). "In determining whether this test is met, 'courts should consider the elements of routineness, regularity, and the importance of the contracted service to the regular business of the employer.'" *Elliott*, 381 F.3d at 1002 (quoting *Finlay*, 764 P.2d at 67).

"In analyzing statutory employer status, courts have been guided by Colorado's 'long-recognized rule that [the workers' compensation act] is to be liberally construed to accomplish its humanitarian purpose of assisting injured workers and their families.'" *Elliott*, 381 F.3d at 1002 (quoting *Garner v. Vanadium Corp. of Am.*, 194 Colo. 358, 572 P.2d 1205, 1206-07 (1977); citing *Stewart v. United States*, 716 F.2d 755, 763 (10th Cir. 1982)). Thus, "the approach has been to find that a party is a statutory employer and thus required to pay workers' compensation to the downstream injured employee as long as the employee's services are necessary and routine to the employer's regular business." *Elliot*, 381 F.3d at 1002 (citing *Buzard v. Super Walls, Inc.*, 681 P.2d 520 (Colo. 1984)).

With this background in mind, the Court turns to the specific requirements underlying a request for additional discovery under Fed. R. Civ. P. 56(d): (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment. *See Adams*, 30 F.4th at 968.

As previously noted, the Court "'may not look beyond the affidavit in considering a Rule 56(d) request.'" *Adams*, 30 F.4th at 968. Here, Plaintiff has provided the Declaration of Kenneth R. Fiedler ("Fiedler") [#54-1], her lead counsel, in support of the Motion [#54].

Regarding the probable facts not available, Mr. Fiedler points to the following probable facts: (1) "Defendant was never in a formal contract with American Guard Services to provide security services at the Central Fill Center"; (2) "Mr. Chavez's scope of duties was never clearly defined by Defendant or American Guard Services"; (3) "Mr. Chavez's duties greatly differed from those of Defendant's in-house loss prevention staff"; (4) "the Central Fill Center was in operation for several years without the use of any security services"; (5) "other security services performed its duties at the Central Fill Center without guards ever leaving their vehicle"; (6) "the security services provided by American Guard Services were not the type of services regularly provided by Defendant"; and (7) "Defendant's operations would not have been hampered in any way if the security services at the Central Fill Center ceased." *Decl. of Fiedler* [#54-1] ¶ 10.

Regarding what steps have been taken to obtain those facts, Mr. Fiedler states:

> On April 7, 2022, in response to a conferral regarding Defendant's intention to file a Motion for Summary Judgment based on Mr. Gerardo Manuel Chavez's status as a statutory employee, I requested additional discovery, including a deposition of a Kroger representative familiar with Mr. Chavez's Worker's Compensation claim and Kroger's Worker's Compensation claims in general, as well as documents related to Mr. Chavez's Worker's Compensation claim that was in the possession of Defendant.

*Decl. of Fiedler* [#54-1] ¶ 5.

Regarding why those facts cannot be presented currently, Mr. Fiedler states: "I received no responsive documents, nor any names or dates to my requests in my April

–10–

7, 2022 letter. I have conferred with opposing counsel on several occasions." *Decl. of Fiedler* [#54-1] ¶ 6.

Regarding how additional time will enable Plaintiff to obtain those facts and respond to the Motion for Summary Judgment [#49], Mr. Fiedler states that allowing additional discovery, consisting of the depositions of Mr. Youssef and Mr. McClanahan, ten additional interrogatories, ten additional requests for production, and the subpoena of documents following Mr. Youssef's deposition, would allow Plaintiff "to discover essential facts that would specifically address Defendant's assertions that Mr. Chavez was a statutory employee at the time of his injury." *Decl. of Fiedler* [#54-1] ¶¶ 8-9.

Even assuming the relevance of the probable facts to which Plaintiff points, and assuming that those facts could be discovered through the specific discovery requested by Plaintiff, the Court finds that there are serious concerns regarding the steps taken to obtain those facts and Plaintiff's proffered reason why those facts cannot be presented currently. Although the parties' discussion throughout the briefs is far more wide-ranging, Mr. Fiedler's Declaration [#54-1] only points to one attempt to obtain those facts, the April 7, 2022 letter and related conferral. *See Adams*, 30 F.4th at 968 ("We expect Rule 56(d) motions to be robust, and we have observed that an *affidavit's* lack of specificity counsels against a finding that the district court abused its discretion in denying a request for additional discovery under the rule." (emphasis added) (quoting *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1206 (10th Cir. 2015) (quotations and alteration omitted)). That letter, again, stated:

> Lastly, I would like to discuss with you who handles the worker's compensation cases on behalf of Kroger. Since you are intending to file a

–11–

> Motion for Summary Judgment based upon statutory employer, then I will need to take the deposition of the person most knowledgeable about worker's compensation claims by Kroger employees and in particular this claim, and obtain any and all documentation submitted on behalf of Gerardo Chavez regarding this incident.

*Response* [#59] at 11.

Plaintiff has not pointed to any formal discovery requests made in connection with this letter. The letter was sent almost three months before Defendant filed its Motion for Summary Judgment [#49] on June 29, 2022. It is clear that Defendant's "statutory employer" defense has been at issue since September 8, 2021, when Defendant filed its Amended Answer [#17-1]. It is also clear from the April 7, 2022 letter that Plaintiff was aware at least as of that date that Defendant would be filing a motion for summary judgment on the issue. Defendant filed the Motion for Summary Judgment [#49] on June 29, 2022, only thirty days prior to the July 29, 2022 discovery cut-off. As stated in the Scheduling Order at §§ 9.f. and 9.g., the deadline to serve written discovery requests was forty-five days before the discovery cut-off, thus June 14, 2022. There is no indication before the Court that Plaintiff had served any related discovery by that deadline or that Plaintiff had or was preparing to send deposition notices of witnesses with information relevant to the present Motion [#54] then.

The Court notes that it is unclear from the briefs precisely how much discovery remained to Plaintiff at the time of the April 7, 2022 letter or when the Motion for Summary Judgment [#49] was filed, based on the discovery limitations imposed in the Scheduling Order. *See* [#21] § 8. Regarding depositions, Plaintiff seems to have had at least two remaining when discovery closed, given the ten depositions permitted in the Scheduling

Order, as agreed to by the parties, *see* [#21] § 8.a., and Defendant's statement in its Response here (filed after the close of discovery) that "Plaintiff has taken eight depositions" and chose "not to do a 30(b)(6) deposition or depose anyone from AGS," *see* [#59] at 5.  Regarding written discovery, the parties have not stated how many interrogatories, requests for production of documents, and requests for admission remained to Plaintiff at the time of the April 7, 2022 letter or when Defendant filed the Motion for Summary Judgment [#49], although from the limited, and likely incomplete, information provided to the Court in connection with the present Motion [#54], there is no indication that that Plaintiff had utilized the entirety of her allotted written discovery. Nevertheless, to the extent that Plaintiff *had* used all of her allotted discovery, she would have needed to seek modification of the Scheduling Order on a showing of good cause, which she never did.  To the extent that Plaintiff had *not* used all of her allotted discovery, there appears to have been no impediment to stop her from noticing the depositions and propounding the additional written discovery requests as a prerequisite to bringing any disputes to the Court's attention, which she also did not do.[1]  Either way, therefore, given that Plaintiff was on notice not only of Defendant's statutory employer defense as of September 8, 2021, but also on notice at least as of April 7, 2022, that Defendant planned to file a motion for summary judgment on the issue, the Court finds that Plaintiff was not

---

[1] The one possible exception is the August 18, 2022 Discovery Hearing, where the Court addressed the issue of Defendant's redactions in the MSA, after which Defendant voluntarily provided an unredacted version of the document.  However, although Plaintiff discusses this document in the briefing, *see, e.g.*, *Motion* [#54] at 4-5, the MSA was not mentioned, by name or obvious reference, at least, in Mr. Fiedler's Declaration [#54-1] as a basis for the Rule 56(d) Motion [#54].

diligent in obtaining the discovery she needed.

Based on these considerations, the Court cannot find that Plaintiff was diligent in trying to obtain the facts to which she points prior to filing the present Motion [#54], the day her response to the Motion for Summary Judgment [#49] was due. "[T]he protection afforded by Rule 56(d) is designed to safeguard against a premature or improvident grant of summary judgment." *Wilcox v. Career Step, LLC*, No. 2:08-CV-0998, 2012 WL 5997201, at *2 (D. Utah Nov. 30, 2012). Given the circumstances discussed above, the Court finds that adjudication of the Motion for Summary Judgment [#49] would be neither premature nor improvident. Thus, the Motion [#54] is **denied**. *See Adams*, 30 F.4th at 968-69 (stating that,"[w]hile the movant's exclusive control of desired information is a factor favoring relief under [Rule 56(d)], it is not sufficient on its own to justify that relief, especially where the other requirements of [Rule 56(d)] have not been met") (quoting *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 784 (10th Cir. 2000)).

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#54] is **DENIED**.

Dated: November 30, 2022

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge