IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-02038-CNS-KLM

ARGELIA ENRIQUE-CHAVEZ, individually and as a Representative on Behalf of the Estate of Gerardo Manuel Chavez, deceased,

　　Plaintiff,

v.

DILLON COMPANIES, LLC d/b/a The Kroger Company a/k/a The Kroger Company,

　　Defendant.

---

## ORDER

---

Before the Court are Defendant's Motion to Exclude Testimony of Plaintiff's Retained Expert, Lila Laux (ECF No. 63) and Motion to Limit Testimony of Plaintiff's Retained Expert, Anne Stodola (ECF No. 64). For the reasons set forth below, the Court DENIES Defendant's Motion to Exclude Dr. Laux's Testimony (ECF No. 63), and GRANTS in part and DENIES in part Defendant's Motion to Limit Ms. Stodola's Testimony (ECF No. 64).

### I. BACKGROUND

A summary of this case's background is set forth in Court's February 28, 2023, Order, in which the Court denied Defendant's summary judgment motion (ECF No. 94 at 1-5). The Court incorporates that summary here. Plaintiff made affirmative expert disclosures of Dr. Lila Laux and Ms. Anne Stodola on March 21, 2022 (ECF No. 63-5 at 3-4). Plaintiff disclosed Ms. Stoloda as a rebuttal expert on August 12, 2022 (ECF No. 64-8). In moving to exclude Dr. Laux's testimony,

1

Defendant essentially argues that Dr. Laux is unqualified as an expert, and that she failed to apply any "identifiable methods by which the reliability" of her findings may be evaluated (ECF No. 63 at 10). In moving to limit the testimony of Ms. Stodola to "a discussion of building code standards and whether those standards were met," Defendant argues that Ms. Stodola's additional opinions are outside her expertise and lack any "discernible methodology" (ECF No. 64 at 2-3). Defendant's exclusion motions are fully briefed. A Final Pretrial Conference is scheduled for March 23, 2023 (ECF No. 95).

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993). The party submitting the expert's testimony must show by a preponderance of the evidence that the testimony is admissible. *See, e.g.*, *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, No. 17-CV-01456-CMA-KLM, 2022 WL 1037572, at *2 (D. Colo. Apr. 1, 2022). To determine whether expert testimony is admissible, a court must determine whether: (1) the expert is qualified; (2) the expert's proffered opinion is reliable; (3) the expert's testimony is relevant; and (4) the proffered testimony will assist the trier of fact. *See id.* at *2; *103 Invs. I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006).

2

An expert is qualified if they have the "knowledge, skill, experience, training, or education" to render an opinion. *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2020) (citing Fed. R. Evid. 702). An expert's testimony is reliable if the methodology employed by the expert is based on "sufficient data, sound methods, and the facts of the case." *Id.* (citation omitted). The expert's testimony must be scientifically sound, but "absolute certainty" is not required. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quotation omitted). Testimony is relevant if it "logically advances a material aspect" of the case and has a "valid scientific connection" to the case's disputed facts. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n.2 (10th Cir. 2005) (citation omitted). The court looks to other non-exclusive factors to determine if the testimony will assist the jury: (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility. *Rodriguez-Felix*, 450 F.3d at 1123 (citation omitted). Doubts about the testimony's usefulness should be resolved in favor of admissibility unless such factors (e.g., time or surprise) weigh in favor of exclusion. *See Robinson v. Missouri Pac. R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (quotation omitted).

### III. ANALYSIS

Having considered Defendant's exclusion motions, related briefing, and relevant legal authority, the Court denies Defendant's Motion to Exclude Dr. Laux's Testimony, and grants in part and denies in part Defendant's Motion to Limit Ms. Stodola's Testimony.

A. **Motion to Exclude Testimony of Retained Expert Lila Laux**

Defendant advances several arguments in support of its contention that Dr. Laux's testimony should be excluded (*see* ECF No. 63 at 5-10). The Court considers Defendants' arguments and characterizations of Dr. Laux's opinions, rejecting them in turn.

***Foreseeability of Fall at Incident Location.*** Defendant argues that Dr. Laux is "not qualified" to opine on "what is foreseeable," and "moreover, [that] her opinion is pure speculation" not grounded in any methodology (ECF No. 63 at 5). The Court disagrees. First, Dr. Laux opined that "[i]t was foreseeable to Kroger that someone could fall when there was no railing on the retaining wall between the two docking areas" (ECF No. 71-1 at 8). Contrary to Defendant's argument, Dr. Laux—who has a doctorate in Industrial/Organizational Psychology and decades of academic and professional experience as a "human factors engineer"—is qualified to offer this opinion (*id.* at 2). *See also Roe*, 42 F.4th at 1180. Second, the Court disagrees with Defendant that Dr. Laux's opinion is impermissibly speculative. As Plaintiff contends, her opinion that someone could fall relates to the Hazard Control Hierarchy, a methodology that analyzes "methods for controlling risk of harm due to foreseeable hazards" (ECF No. 71-1 at 3). Further, Dr. Laux discussed this case's "engineering control (the fence/railing)" in her discussion of the Hazard Control Hierarchy (*id.*). Defendant's citation to *AAA Fire Prot., Inc. v. Orison Mktg*., LLC, No. 18-CV-00253-MEH, 2019 WL 13195249, at *6 (D. Colo. Sept. 4, 2019), fails to persuade that Dr. Laux's opinion is speculative. Here, Dr. Laux's opinion falls within the scope of her expertise as

4

a human factors engineer as demonstrated by her application of the Hazard Control Hierarchy, which is a discernible methodology. *See also Dodge*, 328 F.3d at 1222.[1]

***Absence of Guard Railing.*** Defendant contends that Dr. Laux "indicated" in her expert report that "the lack of a guard rail was hazardous," and that this opinion should be excluded because it is unreliable, not grounded in any methodology, and speculative (ECF No. 63 at 6). The Court disagrees. Dr. Laux opined that "Kroger knew of the hazardous situation that was created when the railing on the retaining wall was taken down" (ECF No. 71-1 at 8). This opinion is reliable because it is based on facts and data of the case—discussed and cited in Dr. Laux's report—as well as the Hazard Control Hierarchy methodology (*see id.* at 3-8). *See also Roe*, 42 F.4th 1175 at 1880.

***Kroger Knew of Hazard and Ignored It.*** Defendant contends that Dr. Laux "indicated" that Defendant knew that the lack of railing was a hazard and "ignored it," and that this opinion should be excluded because it is "cumulative, unreliable, and not based on any articulated methodology" (ECF No. 63 at 7). Dr. Laux opined that (1) Kroger knew how to control the hazard and (2) failed to control the hazardous situation in a timely manner (ECF No. 71-1 at 8).[2] For the same reasons set forth above, Dr. Laux's opinions are reliable: they are based on the case's facts

---

[1] Defendant also points to testimony from Dr. Laux's deposition to support its argument that her opinion should be excluded, but in her deposition Dr. Laux only testified that she was not a "biomechanical engineer"—she did not testify that she lacked any qualifications as a "human factors engineer" (ECF No. 65-8 at 3). In fact, Dr. Laux continued, stating that biomechanical engineering "is part of human factors" (*id.*).

[2] Defendant also moves to exclude under Federal Rule of Evidence 407 because, according to Defendant, she opines that "Kroger knew [of] a dangerous condition because following the incident the railing was replaced" (ECF No. 63 at 8; *see also* ECF No. 71-1 at 8). However, the Court agrees with Plaintiff that—construing the installation of any railing as a subsequent remedial measure—Rule 407 does not apply to Dr. Laux's opinion, because remediation of the issue began before Mr. Chavez's injury occurred (ECF No. 71 at 11-12; *see also* ECF No. 71-1 at 7). Thus, Rule 407 does not bar admission of Dr. Laux's testimony. *See, e.g., W.S.R. by & through Richardson v. FCA US, LLC*, No. 18-CV-6961 (KMK), 2022 WL 4648403, at *8 n.13 (S.D.N.Y. Sept. 30, 2022).

and data, as well as the Hazard Control Hierarchy's methodology (*id.* at 3-8). *See also Roe*, 42 F.4th at 1880. And contrary to Defendant's contention, Dr. Laux's use of materials from the case's factual record, such as Kroger employee e-mails, to form her expert opinions do not make her own expert opinions "cumulative" (ECF No. 63 at 8).

***Lack of Regard for the Safety of Others***. Defendants recycle many of their previous arguments in contending that Dr. Laux's opinion should be excluded, and that fundamentally she is "simply describing her interpretation of Defendant's behavior" (ECF No. 63 at 8). Dr. Laux specifically opined that "Kroger's failure to control the hazard that was present after the rail was taken down in a timely manner shows a complete lack of regard for the safety of people who are on their premises" (ECF No. 71-1 at 8). As discussed above, as a "human factors engineer" Dr. Laux is qualified to render this opinion. This opinion is also reliable because it is based on the Hazard Control Hierarchy and the facts and data of the case (*id.* at 3-8). *See also Roe*, 42 F.4th at 1880. Contrary to Defendant's argument, Dr. Laux's expert report demonstrates that this opinion is more than Dr. Laux's descriptive interpretation of Defendant's behavior. To the extent that Defendant argues this opinion is irrelevant, the Court disagrees: Dr. Laux's opinion logically advances a material aspect of the case, chiefly whether Kroger faces premises liability (ECF No. 63 at 9). *See Norris*, 397 F.3d at 884 n.2; *see also Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005). Defendant's argument that Dr. Laux's opinion "alters the applicable standard of care" and is inadmissible under Rule 403 is likewise unavailing (ECF No. 63 at 9). Dr. Laux is simply opining on the hazard and Kroger's lack of regard for it; she is not offering a legal conclusion. *See O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 929 (D. Colo. 2017) (distinguishing admissible expert testimony that "explaining how industry standards . . .

suggest[ed] that [a claims-handler] should have acted to investigate" from a "legal conclusion"). For these reasons, her opinion is not inadmissible as unfairly prejudicial under Rule 403 (ECF No. 63 at 9). *See also Conrad v. Owners Ins. Co.*, No. 20-CV-02173-KMT, 2021 WL 5280188, at *4 (D. Colo. Nov. 12, 2021) (permitting expert testimony under Rule 403 because, while the "testimony [was] likely to be prejudicial to the [d]efendant's position . . . . it is only *unfair* prejudice that is prohibited").

***Kroger Acting to Control the Hazard in Timely Fashion.*** Finally, Defendant contends that Dr. Laux's opinion that "had Kroger acted to control the hazard in a timely fashion this accident would not have happened" is speculative and not based on a reliable methodology (ECF No. 63 at 9; *see also* ECF No. 71-1 at 8). Defendant further argues that Dr. Laux's opinion "intrudes" on the factfinder's job (*id.*). Defendant's arguments fail to persuade. As discussed above, Dr. Laux is qualified to offer this opinion, and her opinion is based on a valid scientific methodology. Her expert opinion would not usurp the factfinder's role of evaluating a witness's credibility or "deciding the facts." *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005) (quotations omitted); *see also Rodriguez-Felix*, 450 F.3d at 1123 (citation omitted). Moreover, Dr. Laux may provide an "explanation of the criteria" on which her expert opinion is based, and the factfinder remains free to "exercise independent judgment" after hearing Dr. Laux's opinion. *O'Sullivan*, 233 F. Supp. 3d at 929 (citation omitted). Accordingly, Dr. Laux's opinion, which concerns a material aspect of this case, is both reliable and relevant. *See Norris*, 397 F.3d at 884 n.2; *Roe*, 42 F.4th at 1880. The Court is not persuaded by Defendant's argument that Rule 403—whose factors Defendant passingly recites—compels a different conclusion (ECF No. 63 at 10). *See United States*

*v. McVeigh*, 153 F.3d 1166, 1190–91 (10th Cir. 1998), *disapproved of on other grounds by Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999).

\* \* \*

For the reasons set forth above, Defendant's Motion to Exclude Testimony of Plaintiff's Retained Expert (ECF No. 63) is DENIED. Defendant can sufficiently cross-examine Dr. Laux regarding her opinions to show any weaknesses in her methods and analysis. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking . . . admissible evidence.")

### B. Motion to Exclude Testimony of Retained Expert Anne Stodola

Defendant advances several arguments in support of its contention that Ms. Stodola's testimony should be excluded (*see* ECF No. 63 at 5-9). The Court considers Defendant's arguments and characterizations of Ms. Stodola's opinions in turn.

***Indication Machine Guard Was Attached.*** Defendant argues that Ms. Stodola "purports" to opine that Mr. Chavez "had no indication that the guard rail was rigidly attached to the ground," and that this opinion should be excluded because it is not based on any "articulated methodology" (ECF No. 64 at 5). The Court agrees. Unlike other opinions in her expert report, discussed further below, Ms. Stodola's opinion that Mr. Chavez "had no indication that the guard was not rigidly attached to the ground" was, in the words of her report, "[b]ased on the review of the video and Mr. Chavez's initial interaction with the machine guard" (ECF No. 72-2 at 11). Accordingly, the Court agrees that Ms. Stodola's particular opinion that Mr. Chavez had "no indication that the

8

guard was not rigidly attached" is excludable because it is not based on a discernible methodology. *Cf. Roe*, 42 F.4th at 1180.

***Failure to Replace Guard & Disregard for Safety of Others.*** Defendant argues that Ms. Stodola's opinion that Kroger's failure to timely replace the loading dock guard demonstrated a disregard for the safety of others on the property, including Mr. Chavez, should be excluded on the grounds that Ms. Stodola is unqualified to render it, the opinion intrudes on the factfinder's function, and that the opinion is unreliable (ECF No. 64 at 6; *see also* ECF No. 72-2 at 14). The Court disagrees. First, Ms. Stodola is qualified to render this opinion. She holds a graduate degree in mechanical engineering and has decades of experience as a professional engineer (*see* ECF No. 72-1 at 1-2). As Plaintiff argues, her qualifications and professional experience include the use and application of "Failure Analysis," "accident reconstruction," and human factors engineering coursework that concerns the "methods, techniques, theories, and data . . . that can be applied to system, human interface, and product design" (ECF No. 72-2 at 3; *see also* ECF No. 72 at 6-7). Accordingly, Defendant's argument that Ms. Stodola lacks "specialized knowledge, experience or training" fails to persuade (ECF No. 64 at 6). *See also Roe*, 42 F.4th at 1180.

Second, contrary to Defendant's argument, Ms. Stodola's opinion does not intrude on the factfinder's function (ECF No. 64 at 6). For instance, her opinion does not usurp the factfinder's role of evaluating a witness's credibility or "deciding the facts." *Dazey*, 403 F.3d at 1171 (quotations omitted); *see also Rodriguez-Felix*, 450 F.3d at 1123 (citation omitted). Further, in rendering her opinion Ms. Stodola may provide an "explanation of the criteria" on which her expert opinion is based, and the factfinder remains free to "exercise independent judgment" in reaching its ultimate determinations after hearing Ms. Stodola's opinion, which is not a legal conclusion or

9

conclusory statement of law. *O'Sullivan*, 233 F. Supp. 3d at 929 (citation omitted); *see also Bethel*, 2022 WL 1037572, at *2.

Third, Ms. Stodola's opinion is not unreliable "to the extent it implies knowledge of Defendant's intent or mental state," is "circular," or "shows disregard" for relevant evidence (ECF No. 64 at 6). As Plaintiff argues, Ms. Stodola's opinion is reliable because it is rooted in the facts and evidence of this case, and based her expertise as a mechanical engineer (ECF No. 72 at 9-10; *see also, e.g.* ECF No. 72-2 at 13). Therefore, exclusion of Ms. Stodola's opinion is unwarranted. *See Roe*, 42 F.4th at 1180. Similarly, Defendant fails to persuade that Ms. Stodola's opinion is excludable for any reason under Rule 403. *See, e.g., Conrad*, 2021 WL 5280188, at *4.

***Mr. Chavez Would Not Have Fallen Had a Guard Been in Place.*** Defendant argues that Ms. Stodola's "conclusion that utilizing a guard would have prevented Mr. Chavez's fall or injury" is not based on a reliable methodology, and therefore should be excluded (ECF No. 64 at 7). Defendant further argues that Ms. Stodola's opinion intrudes on the factfinder's job, offers no information that would be helpful in making the factfinder's "ultimate determinations," and that Ms. Stodola is unqualified to render this opinion (*id.*). Defendant bombards the Court and Plaintiff with a litany of authorities without any substantive analysis of Ms. Stodola's opinion. However, for substantially the same reasons set forth above in the Court's discussion of Ms. Stodola's other expert opinions, Ms. Stodola's opinion that "[h]ad a guard been in place, Mr. Chavez would not have fallen and would not have sustained fatal injuries" survives Defendant's exclusion motion. She is qualified as an expert to render this opinion, it is based on reliable methodologies—for instance, the "Failure Analysis"—and her opinion, which is not a legal conclusion, does not intrude on the job of the factfinder, and would assist the factfinder in reaching its ultimate determinations

(*see* ECF No. 72-2 at 1-3, 14). *See also, e.g., Roe*, 42 F.4th at 1180; *Bethel*, 2022 WL 1037572, at *2; *O'Sullivan*, 233 F. Supp. 3d at 929.

***Remaining "Conclusions."*** Defendant attempts to exclude the remainder of Ms. Stodola's "conclusions" on the grounds that they merely recite or rely on other evidence and are speculative (ECF No. 64 at 7). Defendant also argues Ms. Stodola's remaining "conclusions" are "duplicative and unhelpful," lacking any probative value (ECF No. 64 at 8). Defendant takes a generalized, scattershot approach in its efforts to exclude the remainder of Ms. Stodola's opinions, none of which Defendant specifically identifies. Regardless—and for substantially the same reasons set forth in its discussion of Ms. Stodola's other opinions—the Court is not persuaded that Ms. Stodola's remaining opinions should be excluded on any ground Defendant identifies in this excerpt of its exclusion motion (*id.* at 7-8). *Cf. Roe*, 42 F.4th at 1180; *Norris*, 397 F.3d at 884 n.2; *Rodriguez-Felix*, 450 F.3d at 1123; *O'Sullivan*, 233 F. Supp. 3d at 929; *Conrad*, 2021 WL 5280188, at *4.

***Ms. Stodola's Rebuttal Expert Report.*** Defendant moves to exclude opinions in Ms. Stodola's rebuttal expert report because essentially she is not qualified to rebut the opinions of Defendant's expert, Mr. Chet Razer, and because her rebuttal report is "devoid of any discernible methodology" (ECF No. 64 at 8). The Court rejects both arguments. First, Ms. Stodola is qualified to render her opinions as a rebuttal expert. For instance, she states in her expert report that she has previous work experience "develop[ing] and implement[ing] safety protocols and maintenance schedules," and clearly draws from her decades of professional experience to offer the Occupation and Safety and Health Administration (OSHA) opinions in her rebuttal expert report (ECF Nos. 72-2 at 3, 64-9 at 2-4, 72-1 at 1-2). At bottom, the Court agrees with Plaintiff that Ms. Stodola is

11

sufficiently qualified to render her "workplace safety" opinions and rejects Defendant's argument to the contrary (ECF Nos. 64 at 8, 72 at 12-13; *see also* ECF No. 72-2 at 3). Second, Ms. Stodola's expert rebuttal report is based on a discernible methodology: the "application of accepted physics, engineering, and reconstruction principles" that Ms. Stodola further discussed in her own expert report (ECF No. 64-9 at 4; *see also* ECF No. 72-2 at 2-4). Therefore, the Court disagrees with Defendant that Ms. Stodola's opinions in the rebuttal report should be excluded on the grounds that they lack any methodological basis (ECF No. 64 at 8-9).

\* \* \*

For the reasons set forth above, Defendant's Motion to Limit Testimony of Plaintiff's Retained Expert, Anne Stodola (ECF No. 64) is GRANTED in part and DENIED in part. Defendant can sufficiently cross-examine Ms. Stodola regarding her opinions to show any weaknesses in her methods and analysis. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking ... admissible evidence.")

## IV. CONCLUSION

Consistent with the above analysis, the Court DENIES Defendant's Motion to Exclude Dr. Laux's Testimony (ECF No. 63), and GRANTS in part and DENIES in part Defendant's Motion to Limit Ms. Stodola's testimony (ECF No. 64).

DATED this 20th day of March 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

13